# UNITED STATES DISTRICT COURT FOR
# THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| **PROJECT ON GOVERNMENT OVERSIGHT, INC.**<br>1100 13th Street, NW<br>Suite 800<br>Washington, DC 20005<br><br>**Plaintiff**,<br><br>v.<br><br>**UNITED STATES DEPARTMENT OF DEFENSE**<br>1600 Pentagon 3E788<br>Washington, DC 205301-1600,<br><br>**Defendant.** | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## **COMPLAINT**

1.      This is an action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, and the Declaratory Judgment Act, 28 U.S.C. §§ 220 and 2202, for injunctive, declaratory, and other appropriate relief. Plaintiff Project On Government Oversight, Inc. ("POGO") challenges the failure of the U.S. Department of Defense ("DoD") to process on an expedited basis and produce all non-exempt documents responsive to two FOIA requests POGO filed seeking a complete electronic copy of a video of strikes by U.S. forces on a boat off the coast of Trinidad carried out on September 2, 2025, and of survivors that was shown to members of the House and Senate Armed Services and Intelligence Committees on December 4, 2025.

2.      This case seeks declaratory relief that DoD is in violation of the FOIA, 5 U.S.C. § 552(a)(6)(E)(i), by failing to process and produce to Plaintiff all non-exempt documents

responsive to POGO's expedited requests for records and for injunctive relief ordering DoD to

process and release to POGO immediately the requested records.

## JURISDICTION AND VENUE

3.    This Court has subject matter jurisdiction over the parties pursuant to 5 U.S.C. §§

552(a)(4)(B) and 552(a)(6)(C)(i). This Court also has jurisdiction over this action pursuant to 28

U.S.C. § 1331.

4.    Venue lies in this district under 5 U.S.C. § 552(a)(4)(B).

## PARTIES

5.    Plaintiff POGO is a nonpartisan independent organization based in Washington,

D.C. and organized under section 501(c)(3) of the Internal Revenue Code. Founded in 1981,

POGO champions reforms to achieve a more effective, ethical, and accountable federal

government that safeguards constitutional principles. POGO's investigators and journalists take

leads and information from insiders and verify the information through investigations using

FOIA, interviews, and other fact-finding strategies. POGO's investigative work has been

recognized by Members of Congress, executive branch officials, and professional journalism

organizations. For instance, in 2015, POGO won the Robert D.G. Lewis Watchdog Award, the

Society of Professional Journalists Washington, D.C. Professional Chapter's highest journalistic

award, for reporting on the Department of Justice's opaque system for handling allegations of

attorney misconduct within its ranks. In 2018, POGO won an award from the Society for

Advancing Business Editing & Writing for its investigative series scrutinizing the government's

oversight of offshore drilling. In 2025, POGO's most recent season of its investigative podcast

series that examined the Department of Homeland Security's focus on immigrants and neglect of

the threat of domestic violent extremism won two Gold awards from the Signal Awards, a Gold

from the Davey Awards, and won third place in the Society for Features Journalism's narrative

podcast category. POGO extensively used records obtained under FOIA for all these

investigations.

6.      Defendant DoD is a federal agency within the meaning of FOIA, 5 U.S.C. §

552(f), and has possession, custody, and control of the records POGO seeks in this action.

## STATUTORY AND REGULATORY BACKGROUND

7.      The FOIA requires federal agencies, upon request, to make records "promptly

available to any person," 5 U.S.C. § 552(a)(3)(A), unless one or more specific statutory

exemptions apply.

8.      The agency must provide the public records when they are requested in order "to

ensure an informed citizenry, vital to the functioning democratic society." *NLRB v. Robbins Tire*

*& Rubber Co.,* 437 U.S. 214, 242 (1978).

9.      For non-expedited requests an agency must make a determination on a FOIA

request within twenty business days and notify the requester of which of the requested records it

will release, which it will withhold, and why, and the requester's right to appeal the determination

to the agency head. 5 U. S.C. § 552(a)(6)(A)(i).

10.     The FOIA also requires agencies to promulgate regulations that provide for

expedited processing of FOIA requests where the requester demonstrates a "compelling need" as

well as "other cases determined by the agency." 5 U.S.C. § 552(a)(6)(E)(i). The FOIA defines

"compelling need" to include requests "made by a person primarily engaged in disseminating

information" where there is an "urgency to inform the public concerning actual or alleged

Federal Government activity." *Id.* at § 552(a)(6)(E)(v)(II).

Case 1:26-cv-00039   Document 1   Filed 01/08/26   Page 4 of 11

11.      DoD's FOIA regulations at 32 C.F.R. § 286.8(e) echo these requirements. For those requests for expedition based on an urgent need for the information and made by a person engaged in disseminating information but not a full-time member of the news media, DoD's regulations require that such a requester establish that their primary professional activity or occupation is information dissemination. *Id.* at § 286.8(e)(3). The regulations further clarify that the existence of numerous articles published on a given subject "can be helpful" in meeting the requirements for expedition. *Id.*

12.      Agencies are required to make a determination on a request for expedition within 10 calendar days "after the request." 5 U.S.C. § 552(a)(6)(E)(ii)(I). DoD regulations mirror this requirement. 32 C.F.R. § 286.8(e)(4).

13.      Agency decisions to deny a request for expedition are subject to judicial review "based on the record before the agency at the time of the determination." 5 U.S.C. 32 C.F.R. § 552(a)(6)(E)(iii).

14.      If an agency does not respond to a FOIA request by the statutory deadline, including a request for expedition, the requester is deemed to have exhausted administrative remedies and may immediately pursue judicial review. 5 U.S.C. §§ 552(a)(6)(C)(i), 552(a)(4)(B).

## FACTUAL BACKGROUND

15.      On September 2, 2025, Defense Secretary Pete Hegseth gave a verbal directive to a U.S. surveillance aircraft to kill everyone on board a vessel off the Trinidad coast. Carrying out the order, the aircraft launched a missile that struck and ignited the boat.

16.      When two men were observed clinging to the wreckage, the Special Operations commander overseeing the attack, Adm. Frank M. "Mitch" Bradley, ordered a second strike, which blew the two men apart in the water. *See, e.g.*, Alex Horton and Ellen Nakashima,

4

"Hegseth order on first Caribbean boat strike, officials say: Kill them all," *Washington Post*, Nov.

29, 2025, https://www.washingtonpost.com/national-security/2025/11/28/hegseth-kill-them-all-

survivors-boat-strike/. Reportedly Adm. Bradley ordered the second strike to fulfill Secretary

Hegseth's command that everyone on board the boat be killed. *Id. See also* Charlie Savage,

Julian E. Barnes, Eric Schmitt and John Ismay, "Hegseth Ordered a Lethal Attack but Not the

Killing of Survivors, Officials Say," *New York Times*, Dec. 1, 2025,

https://www.nytimes.com/2025/12/01/us/hegseth-drug-boat-strike-order-venezuela.html.

17.    Although the Trump administration has tried to justify the attack as part of an

"armed conflict," the alleged traffickers killed by the strike on September 2 posed no threat of

imminent attack on the United States. Horton and Nakashima, *Washington Post*, Nov. 29, 2025.

18.    Since the September 2 attack, U.S. forces have hit dozens of other boats, killing a

total of at least 115 individuals alleged to be engaged in drug smuggling. *"*U.S. military strikes 5

more alleged drug boats, killing 8," *Associated Press*, Dec. 31, 2025, https://www.npr.org/2025/

12/31/g-s1-104194/us-military-strikes-drug-boats-survivors.

19.    In response, the House and Senate Armed Services Committees launched

investigations into the second September 2 strike, which some legal experts have suggested is a

war crime given that the order to kill was directed at two incapacitated individuals. Courtney

Kube, Gordon Lubold and Raquel Coronell Uribe, "House and Senate committees launch

inquiries into second strike on alleged drug boat," *NBC News*, Nov. 29, 2025, https://www.nbc

news.com/politics/national-security/house-senate-launch-inquiries-reported-second-strike-

alleged-drug-boat-rcna246496. *See also* Patricia Zengerie, "Some US Republicans demand

answers on Venezuela strikes, *Reuters*, Dec. 1, 2025, https://www.reuters.com/legal/government/

some-us-republicans-want-answers-venezuela-strikes-despite-trump-2025-12-01/.

20.     On December 4, 2025, the Chairman of the Joint Chiefs of Staff Gen. Dan Caine and Adm. Bradley briefed the leaders of the House and Senate Armed Services and Intelligence Committees on President Trump's campaign against alleged drug trafficking boats, including the September 2 strike on the boat off the coast of Trinidad. Kala Hubbard, Jaala Brown, "Lawmakers see video of second strike on boat survivors, say admiral testified there was no kill order," *CBS News*, Dec. 4, 2025, https://www.cbsnews.cnews/pentagon-briefing-congress-venezuela-alleged-drug-boats/. At the briefing lawmakers were shown a video of the second September 2 attack that has not been made public. *Id.*

21.     According to Rep. Jim Himes, who viewed the video, what he saw "was one of the most troubling things I've ever seen in my time in public service." *Id.* He went on to say, "Any American who sees the video that I saw will see the United States military attacking shipwrecked sailors—bad guys, bad guys—but attacking shipwrecked sailors . . . They were not in a position to continue their mission in any way." *Id.*

22.     Sen. Chris Coons, who also attended the briefing, stated that after seeing the video he has "more policy questions that ever" about the mission. *Id.*

23.     The September 2 strike has raised bipartisan concerns about its legality, and widespread public concern. *Id.* Although President Trump has stated he would support releasing the video of the strike, *id.*, Defense Secretary Pete Hegseth has made it clear that the Pentagon will not release the full, unedited video of the September 2 strike. Lara Seligan, Anvee Bhutani, and Shelby Holliday, "Hegseth: Pentagon Won't Release Full Video of September 2 Boat Strike," *Wall Street Journal*, Dec. 16, 2025, https://www.wsj.com/politics/national-security/pete-hegseth-boat-strike-video-no-release-28feb869?mod=hp_lead_pos2. To date, the full video has not been released to the public.

*Plaintiff's Expedited FOIA Requests*

24.     On December 4, 2025, POGO submitted a FOIA request to DoD's Office of the Secretary of Defense using the online portal FOIA.gov.

25.     Specifically, Plaintiff requested an electronic copy of the complete video (or videos) shown to lawmakers on the House and Senate armed services and intelligence committees on December 4, 2025, as part of a briefing that included General Dan Caine, chairman of the Joint Chiefs of Staff, and Navy Admiral Frank "Mitch" Bradley, head of Special Operations Command.

26.     POGO's request noted that both Senator Tom Cotton, chairman of the Senate Select Committee on Intelligence, and Representative Jim Himes, ranking member of the House Permanent Select Committee on Intelligence, have publicly discussed the video. POGO further explained that the video (or videos) is of September 2, 2025 strikes by U.S. forces on a boat and survivors off the coast of Trinidad.

27.     POGO requested a fee waiver explaining that it has no commercial interest in the requested records, which will serve the public interest by contributing to shedding light on matters involving federal operations, government integrity, and compliance with the law at the highest levels, namely Secretary of Defense Pete Hegseth and Adm. Bradley. The requested records will also shed light on whether U.S. military strikes on shipwrecked survivors at sea violated the law. POGO further explained that release of the requested records will significantly advance what the public knows about the incident and will shed light on officials' statements about the lawfulness of the strikes.

28.     POGO also requested expedited processing of its FOIA request because the information in the requested documents is urgently needed to inform the public concerning some actual or alleged government activity.

29.     As POGO explained in justifying its request for expedition, the subject of its request is of widespread and exceptional media interest and as well as bipartisan concern in Congress and the information sought involves possible questions about the government's integrity that affect public confidence. The subject implicates potential disregard for laws regarding killing shipwrecked survivors and the use of the U.S. military to take the lives of people who may pose no threat.

30.     In further support of its expedition request POGO provided numerous links to public reporting about the incident underlying POGO's FOIA request.

31.     According to DoD's FOIA portal, in December 2025, DoD granted POGO's request to expedite POGO's December 4, 2025 FOIA request submitted to DoD's Office of the Secretary.

32.     To date, POGO has not received any communication from DoD's Office of the Secretary, nor has POGO received any records responsive to its December 4, 2025 FOIA request to DoD's Office of the Secretary.

33.     On December 4, 2025, POGO submitted via the online portal an identical FOIA request to DoD's U.S. Special Operations Command. POGO also requested a fee waiver and expedited processing of this request based on the identical justifications it provided for its December 4, 2025 request of DoD's Office of the Secretary.

34.    To date, POGO has not received any communication from DoD regarding POGO's FOIA request to DoD's U.S. Special Operations Command, nor has DoD acted on POGO's request for expedition.

## COUNT ONE
## PLAINTIFF'S CLAIM FOR RELIEF
### (Failure to Grant Expedition)

35.    Plaintiff repeats and re-alleges paragraphs 1-34.

36.    Plaintiff properly asked that DoD expedite the processing of Plaintiff's December 4, 2025 FOIA request to DoD's U.S. Special Operations Command, which seek agency records in the possession, custody, and control of DoD, based on Plaintiff's showing of the urgency to inform the public concerning some actual or alleged government activity and that the request is made by a member of the media.

37.    Defendant failed to act on Plaintiff's requests for expedition in the time mandated by the FOIA and failed to grant expedited processing of Plaintiff's December 4, 2025 FOIA request to DoD's U.S. Special Operations Command.

38.    Plaintiff has exhausted all applicable administrative remedies with respect to Defendant's denial of Plaintiff's request for expedition.

39.    Plaintiff POGO is therefore entitled to injunctive and declaratory relief with respect to the immediate and expedited processing and disclosure of the records requested in its December 4, 2025 FOIA request to DoD's U.S. Special Operations Command at no cost to Plaintiff.

## CLAIM TWO
### (Wrongful Withholding of Non-Exempt Responsive Records)

40.    Plaintiff repeats and re-alleges paragraphs 1-39.

41.     Plaintiff properly asked for agency records within the possession, custody, and control of DoD.

42.     Defendant DoD wrongfully withheld agency records requested by Plaintiff by refusing to process Plaintiff's requests on an expedited basis and wrongfully withholding records responsive to those requests.

43.     Plaintiff POGO is therefore entitled to injunctive and declaratory relief with respect to the immediate processing and disclosure of records requested in its December 4, 2025 FOIA requests at no cost to Plaintiff.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Court:

(1)     Order Defendant to immediately and fully process plaintiff's expedited December 4, 2025 FOIA requests and to disclose all non-exempt documents immediately and at no cost to Plaintiff;

(2)     Issue a declaration that Plaintiff is entitled to the immediate and expedited processing and disclosure of the requested records at no cost to Plaintiff;

(3)     Provide for expeditious proceedings in this action;

(4)     Retain jurisdiction of the action to ensure no agency records are wrongfully withheld;

(5)     Award Plaintiff its costs and reasonable attorney's fees in this action; and

(6)     Grant such other relief as the Court may deem just and proper.

Respectfully submitted,

/s/Anne L. Weismann
Anne L. Weismann
(D.C. Bar No. 298190)
5335 Wisconsin Avenue, NW

Suite 640
Washington, DC 20015
(301) 717-6610
Weismann.anne@gmail.com

Dated: January 8, 2026                     *Attorney for Plaintiff*