UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| PROJECT ON GOVERNMENT OVERSIGHT, INC.,<br><br>Plaintiff,<br><br>v.<br><br>DEPARTMENT OF DEFENSE,<br><br>Defendant. | Civil Action No. 26-0039 (JMC) |

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM IN SUPPORT THEREOF**

## TABLE OF CONTENTS


Table of Authorities ..... ii

Background ..... 1

Legal Standards ..... 2

I. Summary Judgment Generally ..... 2

II. Summary Judgment in FOIA Cases ..... 3

Argument ..... 4

I. Defendant Conducted a Reasonable and Legally Sufficient Search ..... 4

A. Adequacy of Agency Searches in Response to FOIA Requests ..... 4

B. Defendant Located the Specific Video that Plaintiff Seeks ..... 5

II. Defendant Properly Determined that the Requested Video was Classified Pursuant to Executive Order 13526 and Exempt from Release Under FOIA Exemption 1 ..... 6

A. FOIA Exemption 1 and Executive Order 13526 ..... 6

B. Defendant Properly Determined that the Requested Video was Classified Pursuant to Executive Order 13526 ..... 9

III. Defendant Properly Applied the FOIA's Foreseeable Harm Standard in Its Withholding Determination ..... 10

A. The FOIA's Foreseeable Harm Standard ..... 11

B. Defendant Determined that Disclosure of the Requested Video Could Reasonably Be Expected to Cause Damage to the National Security ..... 11

IV. Defendant Has Fulfilled Its Segregability Obligations ..... 12

A. Agency Segregability Obligations Under the FOIA. ..... 13

B. Defendant Properly Determined that There Were No Reasonably Segregable Portions of the Video that Could Be Released ..... 14

Conclusion ..... 16

## TABLE OF AUTHORITIES

**Cases**

**ACLU v. Dep't of Def.*,
628 F.3d 612 (D.C. Cir. 2011) .......... 7, 15

*ACLU v. Dep't of State*,
878 F. Supp. 2d 215 (D.D.C. 2012) .......... 9

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986) .......... 2, 3

**Armstrong v. Exec. Off. of the President*,
97 F.3d 575 (D.C. Cir. 1996) .......... 13, 15

*Barnard v. Dep't of Homeland Sec.*,
598 F. Supp. 2d 1 (D.D.C. 2009) .......... 5, 6

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986) .......... 2, 3

*CIA v. Sims*,
471 U.S. 159 (1985) .......... 14

**Ctr. for Nat'l Sec. Stud. v. Dep't of Just.*,
331 F.3d 918 (D.C. Cir. 2003) .......... 8, 9

*Defs. of Wildlife v. Border Patrol*,
623 F. Supp. 2d 83 (D.D.C. 2009) .......... 3

*Duenas Iturralde v. Comptroller of Currency*,
315 F.3d 311 (D.C. Cir. 2003) .......... 5

**Durrani v. Dep't of Just.*,
607 F. Supp. 2d 77 (D.D.C. 2009) .......... 13

*Edelman v. SEC*,
172 F. Supp. 3d 133 (D.D.C. 2016) .......... 4

*Hum. Rts. Def. Ctr. v. U.S. Park Police*,
126 F.4th 708 (D.C. Cir. 2025) .......... 11

**Jud. Watch, Inc. v. Dep't of Def.*,
715 F.3d 937 (D.C. Cir. 2013) .......... 7, 9

**Knight First Amend. Inst. at Columbia Univ. v. CIA*,
11 F.4th 810 (D.C. Cir. 2021) .......... 4, 8, 11, 14, 15

*Laningham v. Navy*,
813 F.2d 1236 (D.C. Cir. 1987) .......... 3

**Larson v. Dep't of State*,
565 F.3d 857 (D.C. Cir. 2009) .......... 4, 9

**Leopold v. Dep't of Just.*,
94 F.4th 33 (D.C. Cir. 2024) .......... 10, 12

*Leopold v. Dep't of Just.*,
697 F. App'x 9 (D.C. Cir. 2017) .......... 8

*Londrigan v. FBI*,
670 F.2d 1164 (D.C. Cir. 1981) .......... 5

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
475 U.S. 574 (1986) .......... 2

*McCutchen v. Dep't of Health & Hum. Servs.*,
30 F.3d 183 (D.C. Cir. 1994) .......... 6

*Mead Data Cent., Inc. v. Dep't of Air Force*,
566 F.2d 242 (D.C. Cir. 1977) .......... 13

*Morley v. CIA*,
508 F.3d 1108 (D.C. Cir. 2007) .......... 8

*Oglesby v. Dep't of Army*,
920 F.2d 57 (D.C. Cir. 1990) .......... 4, 5

*Prop. of the People, Inc. v. Dep't of Just.*,
405 F. Supp. 3d 99 (D.D.C. 2019) .......... 5

*Pub. Educ. Ctr., Inc. v. Dep't of Def.*,
905 F. Supp. 19 (D.D.C. 1995) .......... 9

**Reps. Comm. for Freedom of the Press v. FBI*,
3 F.4th 350 (D.C. Cir. 2021) .......... 11, 13, 15

*Rosenberg v. Dep't of Def.*,
342 F. Supp. 3d 62 (D.D.C. 2018) .......... 9

*SafeCard Servs. Inc. v. SEC*,
926 F.2d 1197 (D.C. Cir. 1991) .......... 5

**Schaerr v. Dep't of Just.*,
69 F.4th 924 (D.C. Cir. 2023) .......... 8, 15

*Slaughter v. Dep't of Air Force*,
Civ. A. No. 24-862 (RCL), 2026 U.S. Dist. LEXIS 42281 (D.D.C. Mar. 2, 2026) .......... 10

*Smith v. CIA*,
393 F. Supp. 3d 72 (D.D.C. 2019) .......... 8

*Steinberg v. Dept' of Just.*,
23 F.3d 548 (D.C. Cir. 1994) .................... 3, 6

*Students Against Genocide v. Dep't of State*,
257 F.3d 828 (D.C. Cir. 2001) .................... 3

*Students Against Genocide v. Dep't of State*,
Civ. A. No. 96-667 (CKK/JMF), 1998 U.S. Dist. LEXIS 23088 (D.D.C. Aug. 24, 1998) .... 10

**Summers v. Dep't of Just.*,
517 F. Supp. 2d 231 (D.D.C. 2007) .................... 9

**Sussman v. U.S. Marshals Serv.*,
494 F.3d 1106 (D.C. Cir. 2007) .................... 13, 15

*Sweats Fashions, Inc. v. Pannill Knitting Co., Inc.*,
833 F.2d 1560 (Fed. Cir. 1987) .................... 2

*Toensing v. Dep't of Just.*,
890 F. Supp. 2d 121 (D.D.C. 2012) .................... 4

**Valencia-Lucena v. Coast Guard*,
180 F.3d 321 (D.C. Cir. 1999) .................... 4–5, 6

*Weisberg v. Dep't of Just.*,
627 F.2d 365 (D.C. Cir. 1980) .................... 3

**Statutes**

5 U.S.C. § 552 .................... 6, 11, 12, 13

**Other**

*Executive Order 13526, 75 Fed. Reg. 707 (Dec. 29, 2009), *as corrected by* 75 Fed. Reg. 1013 (Dec. 29, 2009) .................... 6, 7, 9, 10, 11, 12

Pursuant to Federal Rule of Civil Procedure ("Rule") 56 and Local Civil Rule 7(h), Defendant the Department of Defense, by and through undersigned counsel, respectfully moves for summary judgment on all claims brought by Project on Government Oversight ("Plaintiff") under the Freedom of Information Act ("FOIA").

**BACKGROUND**

The factual and administrative background are further set forth in Defendant's Statement of Material Facts Not in Genuine Dispute and the declaration of Ricky D. Buria (Def. Ex. A), and accompanying exhibit, which are incorporated herein by reference.

On December 4, 2025, Plaintiff submitted two identical FOIA requests to the Department of Defense and U.S. Special Operations Command seeking "an electronic copy of the complete video (or videos) shown to lawmakers on the House and Senate armed services and intelligence committees on December 4, 2025" relating to U.S. airstrikes on a vessel off the Trinidad coast on September 2, 2025. Compl. (ECF No. 1) ¶¶ 24–25, 33. Heavily truncated portions of the footage at issue in this case have been publicly posted on government social media, Buria Decl. ¶¶ 10, 15, and some members of Congress have viewed the footage during classified briefings, *id.* ¶¶ 3, 15. However, Defendant is unaware of any authorized public disclosures of full-length videos of the strikes to date. *id.* ¶ 15.

After not receiving a response to its FOIA requests, Plaintiff brought this action on January 8, 2026. *See generally id.* Defendant answered on February 11, 2026. *See* Answer (ECF No. 7). Plaintiff's request to the U.S. Special Operations Command had been referred to U.S. Southern Command for processing on January 15, 2026. Feb. 27, 2026 Joint Status Report ("JSR") (ECF No. 8) ¶ 3. Defendant continued processing Plaintiff's request, which involved complex coordination among components for interagency consultation. *Id.* ¶ 4. Defendant located the video sought by Plaintiff, and continued to take steps to process, transfer, and review the video and its

classification. Mar. 27, 2026 JSR (ECF No. 8) ¶ 5. Following this coordination and review, Defendant began the reviews necessary between U.S. Southern Command and the Office of the Secretary of Defense. *See* May 4, 2026 JSR (ECF No. 11) ¶¶ 4–5.

On May 13, 2026, Plaintiff was informed that Defendant would not be making any further release of the requested videos and withheld all portions not already released pursuant to FOIA Exemption 1. June 3, 2026 JSR (ECF No. 15) ¶ 4; *see also* Def. Ex. B.[1]

## LEGAL STANDARDS

### I. <u>Summary Judgment Generally</u>

The Supreme Court has explained that the "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy, and inexpensive determination of every action.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (quoting Rule 1). Where no genuine dispute exists as to any material fact—which is one that would change the outcome of the litigation—summary judgment is required. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). "[T]he burden on the moving party may be discharged by 'showing' – that is, pointing out to the District Court – that *there is an absence of evidence to support the non-moving party's case*." *Sweats Fashions, Inc. v. Pannill Knitting Co., Inc.*, 833 F.2d 1560, 1563 (Fed. Cir. 1987) (emphasis in original) (quoting *Celotex*, 477 U.S. at 325). Once the moving party has met its burden, the non-movant may not rest on mere allegations but must instead proffer specific facts showing that a genuine issue exists for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986).

---

[1] On June 4, 2026, Defendant issued Plaintiff a formal determination letter documenting the withholding pursuant to FOIA Exemption 1. *See* Def. Ex. B.

The Supreme Court has held that in responding to a proper motion for summary judgment, the party who bears the burden of proof on an issue at trial must "make a sufficient showing on an essential element of her case" to establish a genuine dispute. *Celotex*, 477 U.S. at 322–23. The Supreme Court has further explained that "the mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252; *see also Laningham v. Navy*, 813 F.2d 1236, 1242 (D.C. Cir. 1987) (explaining that the non-moving party is "required to provide evidence that would permit a reasonable jury to find" in its favor). Thus, to avoid summary judgment, the plaintiff must present some objective evidence that would enable a court to find that it is entitled to relief.

## II. <u>Summary Judgment in FOIA Cases</u>

The summary judgment standards set forth above apply to FOIA cases, which "typically and appropriately are decided on motions for summary judgment." *Defs. of Wildlife v. Border Patrol*, 623 F. Supp. 2d 83, 87 (D.D.C. 2009). To obtain summary judgment in a FOIA action, an agency must show, viewing the facts in a light most favorable to the requestor, that there is no genuine issue of material fact as to the agency's compliance with the FOIA. *Steinberg v. Dept' of Just.*, 23 F.3d 548, 551 (D.C. Cir. 1994). An agency is entitled to summary judgment as soon as it demonstrates that no material facts are in dispute and that each document that falls within the class requested either has been produced, has not been withheld, is unidentifiable, or is exempt from disclosure. *Students Against Genocide v. Dep't of State*, 257 F.3d 828, 833 (D.C. Cir. 2001); *Weisberg v. Dep't of Just.*, 627 F.2d 365, 368 (D.C. Cir. 1980).

The court may award summary judgment based solely upon the information provided in affidavits or declarations when they "'describe the justifications for nondisclosure with reasonably specific detail . . . and are not controverted by either contrary evidence in the record, nor by

evidence of agency bad faith.'" *Larson v. Dep't of State*, 565 F.3d 857, 862 (D.C. Cir. 2009) (quoting *Miller v. Casey*, 730 F.2d 773, 776 (D.C. Cir. 1984)); *see also Knight First Amend. Inst. at Columbia Univ. v. CIA*, 11 F.4th 810, 817 (D.C. Cir. 2021) ("Moreover, in the national-security context, 'courts must accord *substantial weight* to an agency's affidavit concerning the details of the classified status of the disputed record.'") (alteration in original) (quoting *Wolf v. CIA*, 473 F.3d 370, 374 (D.C. Cir. 2007)) (additional citation omitted).

## ARGUMENT

Defendant is entitled to summary judgment. First, Defendant conducted an adequate search to locate the specific record Plaintiff sought. Second, the Defendant properly withheld—pursuant to FOIA Exemption 1—classified information protected from disclosure. Finally, Defendant properly considered FOIA's foreseeable harm standard and conducted the required segregability analysis of all responsive video in determining that no further releases were appropriate.

### I. <u>Defendant Conducted a Reasonable and Legally Sufficient Search</u>

When a plaintiff challenges an agency's response to a FOIA request, the agency must show (1) that it "conducted a search reasonably calculated to uncover all relevant documents[,]" and (2) "that each document that falls within the class requested either has been produced . . . or is wholly exempt from the [FOIA]'s inspection requirements." *Toensing v. Dep't of Just.*, 890 F. Supp. 2d 121, 131 (D.D.C. 2012) (cleaned up).

#### A. Adequacy of Agency Searches in Response to FOIA Requests

The FOIA requires agencies to "conduct an adequate search for responsive records." *Edelman v. SEC*, 172 F. Supp. 3d 133, 144 (D.D.C. 2016). A reasonable search is one that covers those locations where responsive records are likely to be located. *Oglesby v. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990); *see also Valencia-Lucena v. Coast Guard*, 180 F.3d 321, 325 (D.C. Cir. 1999) ("An agency fulfills its obligations under the FOIA if it can demonstrate beyond a

material doubt that its search was 'reasonably calculated to uncover all relevant documents.'") (quoting *Truitt v. Dep't of State*, 897 F.2d 540 (D.C. Cir. 1990)). The adequacy of a search is "determined not by the fruits of the search, but by the appropriateness of the methods used to carry out the search." *Duenas Iturralde v. Comptroller of Currency*, 315 F.3d 311, 315 (D.C. Cir. 2003) (citing *Steinberg*, 23 F.3d at 551).

To demonstrate the adequacy of its searches, Defendant may rely on "reasonably detailed affidavit[s], setting forth the search terms and the type of search performed, and averring that all files likely to contain responsive materials . . . were searched." *See Oglesby*, 920 F.2d at 68; *see also SafeCard Servs. Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991) ("Agency affidavits are accorded a presumption of good faith, which cannot be rebutted by 'purely speculative claims about the existence and discoverability of other documents.'") (quoting *Ground Saucer Watch, Inc. v. CIA*, 692 F.2d 770, 771 (D.C. Cir. 1981)).

Such affidavits must be based on personal knowledge, *Londrigan v. FBI*, 670 F.2d 1164, 1174 (D.C. Cir. 1981), and "[a] declarant in a FOIA case satisfies the personal knowledge requirement . . . if in his declaration, he attests to his personal knowledge of the procedures used in handling a FOIA request and his familiarity with the document in question, *Prop. of the People, Inc. v. Dep't of Just.*, 405 F. Supp. 3d 99, 125 (D.D.C. 2019); *see also Barnard v. Dep't of Homeland Sec.*, 598 F. Supp. 2d 1, 19 (D.D.C. 2009) (explaining that obtaining such information through conversations with other agency employees is "acquired through the performance of . . . official duties").

### B. Defendant Located the Specific Video that Plaintiff Seeks

Here, there is no doubt that Defendant's search was adequate. "Plaintiff requested an electronic copy of the complete video (or videos) shown to lawmakers on the House and Senate

armed services and intelligence committees on December 4, 2025" regarding the "September 2, 2025 strikes by U.S. forces." *See* Compl. (ECF No. 1) ¶¶ 24–26, 33.

"In response to [Plaintiff's] FOIA request, the United States Special Operations Command tasked a classified subordinate element, responsible for archiving strike videos, with a search of its electronic drives." Buria Decl. ¶ 3. As a result of Defendant's search, the specific video that Plaintiff seeks was located "[u]sing the specified date, times, and locations." *Id.* ¶ 3. Defendant uploaded the video to secure systems for further processing and transmitted it to the Office of the Secretary of War "for final review and release determination." *Id.* Thus, the record here does not "leave[] substantial doubt as to the sufficiency of Defendant' search, *cf. Valencia-Lucena*, 180 F.3d at 325, and summary judgment is appropriate as to that aspect of this case, *see Steinberg*, 23 F.3d at 552.

## II. Defendant Properly Determined that the Requested Video was Classified Pursuant to Executive Order 13526 and Exempt from Release Under FOIA Exemption 1

### A. FOIA Exemption 1 and Executive Order 13526

The FOIA does not allow the public to have unfettered access to government files. *See, e.g.*, *McCutchen v. Dep't of Health & Hum. Servs.*, 30 F.3d 183, 184 (D.C. Cir. 1994). Under Exemption 1, agencies may withhold records "specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy" that "are in fact properly classified pursuant to such Executive order." 5 U.S.C. § 552(b)(1).

Executive Order 13526 currently governs the classification of government records. *See* Exec. Order No. 13526, 75 Fed. Reg. 707 (Dec. 29, 2009), *as corrected by* 75 Fed. Reg. 1013 (Dec. 29, 2009). Pursuant to Executive Order 13526, information may be classified if it "pertains to" one or more of eight categories of information, *id.* § 1.4, and if an original classification authority has "determine[d] that the unauthorized disclosure of the information reasonably could

be expected to result in damage to the national security," *id.* § 1.1(a)(4). Executive Order 13526 provides the following four standards, each of which must be satisfied to be originally classified:

> (1) "[A]n original classification authority is classifying the information;
> (2) the information is owned by, produced by or for, or is under the control of the United States Government;
> (3) the information falls within one or more of the categories of information listed in section 1.4 of this order; and
> (4) the original classification authority determines that the unauthorized disclosure of the information could reasonably be expected to result in damage to the national security, which includes defense against transnational terrorism, and the original classification authority is able to identify or describe the damage.

Exec. Order No. 13526 § 1.1(a).

Section 1.4 provides that information may be classified if it "pertains to" the following:

> (a) [M]ilitary plans, weapons systems, or operations;
> (b) foreign government information;
> (c) intelligence activities (including covert action), intelligence sources or methods, or cryptology;
> (d) foreign relations or foreign activities of the United States, including confidential sources;
> (e) scientific, technological, or economic matters relating to the national security;
> (f) United States Government programs for safeguarding nuclear materials or facilities;
> (g) vulnerabilities or capabilities of systems, installations, infrastructures, projects, plans, or protection services relating to the national security; or
> (h) the development, production, or use of weapons of mass destruction.

*Id.* § 1.4.

"Because courts lack the expertise necessary to second-guess [] agency opinions in the typical national security FOIA case, [courts] must accord substantial weight to an agency's affidavit concerning the details of the classified status of the disputed record." *ACLU v. Dep't of Def.*, 628 F.3d 612, 619 (D.C. Cir. 2011) (cleaned up). As the D.C. Circuit has noted, "'pertains' is 'not a very demanding verb.'" *Jud. Watch, Inc. v. Dep't of Def.*, 715 F.3d 937, 941 (D.C. Cir. 2013) (citation omitted). The D.C. Circuit has also reinforced that "the government's burden is a light one" when withholding pursuant to Exemption 1. *ACLU*, 628 F.3d at 624.

Courts generally defer to agency expertise in national security cases. *See, e.g.*, *Leopold v. Dep't of Just.*, 697 F. App'x 9, 9–10 (D.C. Cir. 2017); *Smith v. CIA*, 393 F. Supp. 3d 72, 82 (D.D.C. 2019) (acknowledging that courts "approach affidavits with the awareness that the Executive Branch has a fuller knowledge of what information ought to be classified"). The standard of review that courts apply in cases involving classified information is a deferential "logical or plausible" standard. *See, e.g.*, *Knight First Amend. Inst.*, 11 F.4th at 819 (quoting *Wolf*, 473 F.3d at 374–75)

"[I]n the FOIA context, [the D.C. Circuit has] consistently deferred to executive affidavits in predicting harm to national security, and ha[s] found it unwise to undertake searching judicial review." *Id.* (quoting *Ctr. for Nat'l Sec. Stud. v. Dep't of Just.*, 331 F.3d 918, 927 (D.C. Cir. 2003)). In fact, the D.C. Circuit recently reiterated that it continues to grant the government substantial deference in Exemption 1 cases. *See Schaerr v. Dep't of Just.*, 69 F.4th 924, 929 (D.C. Cir. 2023) ("Recognizing that national security is primarily the province of the Executive, we decline to micromanage agency determinations that such information should remain secret," and "[w]hen reviewing agency affidavits invoking Exemption One, we simply consider whether the agency has plausibly asserted that the matters are in fact properly classified pursuant to an executive order.").

The D.C. Circuit has noted that "little proof or explanation is required beyond a plausible assertion that information is properly classified." *Morley v. CIA*, 508 F.3d 1108, 1124 (D.C. Cir. 2007). This level of deference is appropriate given the "magnitude of the national security interests and potential risks at stake," because national security officials are uniquely positioned to view "the whole picture" and "weigh the variety of subtle and complex factors[.]" *Ctr. for Nat'l Sec. Stud.*, 331 F.3d at 927–28 (quoting *CIA v. Sims*, 471 U.S. 159, 179–80 (1985)) (rejecting artificial limits on deference and explaining that "deference depends on the substance of the danger posed by disclosure—that is, harm to the national security—not the FOIA exemption invoked").

### B. Defendant Properly Determined that the Requested Video was Classified Pursuant to Executive Order 13526

The requested video was originally classified as top secret and was subsequently downgraded to confidential, Buria Decl. ¶ 7 n.1, because its unauthorized disclosure "reasonably could be expected to result in damage to the national security. *Id.* ¶ 7 (citing Exec. Order 13526 § 1.2(a)(3)); *see also id.* at ¶¶ 8–9 (specifying the foreseeable harm, discussed *infra*). Thus, Defendant "readily satisfies the standard for a plausible and logical explanation for classification." *Cf. Rosenberg v. Dep't of Def.*, 342 F. Supp. 3d 62, 84 (D.D.C. 2018).

"Executive departments responsible for national defense and foreign policy matters have unique insights into what adverse affects [sic] might occur as a result of a particular classified record." *Larson*, 565 F.3d at 864; *see also Summers v. Dep't of Just.*, 517 F. Supp. 2d 231, 238 (D.D.C. 2007) (noting that assessing potential harm to an intelligence source from disclosure "is the duty of the agency, and not the court"). Defendant identified the two subject matter classification categories—Section 1.4(a), protecting military plans, weapons systems, or operations, and Section 1.4(g)—protecting vulnerabilities or capabilities of systems relating to national security—under which the requested video was appropriately classified and therefore subsequently withheld from Plaintiff. *See, e.g.*, Buria Decl. ¶ 12.

First, Defendant properly determined that the requested video was classified pursuant to Section 1.4(a) because it "displays active military operations, to include the scope, duration, and targeting of those operations[.]" *Id.* ¶ 13; *cf. ACLU v. Dep't of State*, 878 F. Supp. 2d 215, 222 (D.D.C. 2012) (protecting details of military flight operations); *Pub. Educ. Ctr., Inc. v. Dep't of Def.*, 905 F. Supp. 19, 21 (D.D.C. 1995) (protecting videotapes made during U.S. military action in Somalia under Section 1.4(a)) (decided under Executive Order 12356); *see also Jud. Watch,* 715 F.3d at 941 (upholding exemption 1 assertion over post-mortem images of Osama bin Laden).

Second, Defendant also properly determined that the requested video was subject to classification under Section 1.4(g) because it "offers a potential window into the capabilities and the potential vulnerabilities of U.S. military surveillance and targeting capabilities[.]" Buria Decl. ¶ 14; *cf. Slaughter v. Dep't of Air Force*, Civ. A. No. 24-862 (RCL), 2026 U.S. Dist. LEXIS 42281, at *15 (D.D.C. Mar. 2, 2026) (finding the Air Force properly withheld classified flight footage to prevent adversaries from developing techniques to negate the advantages of the F-22); *Students Against Genocide v. Dep't of State*, Civ. A. No. 96-667 (CKK/JMF), 1998 U.S. Dist. LEXIS 23088, at *40–41 (D.D.C. Aug. 24, 1998) (upholding exemption 1 assertion over, among other things, satellite imagery depicting Srebrenica massacre, because disclosure could reveal classified imaging capabilities of the satellite), *aff'd*, 257 F.3d 828 (D.C. Cir. 2001)

Accordingly, Defendant has met its burden to demonstrate that the record was properly classified pursuant to Executive Order 13526, Sections 1.4(a) and 1.4(g). *See also* Buria Decl. ¶ 11 ("The information withheld has not been classified to conceal violations of law, inefficiency, or administrative error; prevent embarrassment to a person, organization, or agency; restrain competition; or prevent or delay release of information that does not require protection in the interests of national security[.]").

## III. Defendant Properly Applied the FOIA's Foreseeable Harm Standard in Its <u>Withholding Determination</u>

To justify withholdings pursuant to most FOIA Exemptions, an agency must show that it (1) "reasonably foresees that disclosure would harm an interest protected by [that] exemption" and (2) that it has "release[d] any reasonably segregable information with the [exempt] record[s] that could be disclosed without causing reasonably foreseeable harm to an interest that the exemption[s] protect[]." *See Leopold v. Dep't of Just.*, 94 F.4th 33, 37 (D.C. Cir. 2024) (cleaned up).

### A. The FOIA's Foreseeable Harm Standard

In 2016, Congress enacted the FOIA Improvement Act, which "imposed additional, crosscutting obligations on each agency considering withholding information under any FOIA exemption." *Hum. Rts. Def. Ctr. v. U.S. Park Police*, 126 F.4th 708, 713–14 (D.C. Cir. 2025). This requires the agencies to disclose information otherwise protected by an Exemption unless it "reasonably foresees that disclosure would harm an interest protected by an exemption" or the "disclosure is prohibited by law." 5 U.S.C. § 552(a)(8)(A)(i). Agencies bear the burden of establishing that disclosure of the exempt information would result in reasonably foreseeable harm. *Reps. Comm. for Freedom of the Press v. FBI*, 3 F.4th 350, 369 (D.C. Cir. 2021) (holding that the reasonable harm requirement imposes an "independent and meaningful burden on agencies") (quoting *Ctr. for Investigative Reporting v. Customs & Border Prot.*, 436 F. Supp. 3d 90, 106 (D.D.C. 2019)). This requires agencies to "articulate both the nature of the harm [from release] and the link between the specified harm and the specific information contained in the material withheld." *Id.* (alteration in original) (citing H.R. Rep. No. 391, 114th Cong., 2d Sess. 9 (2016)).

### B. Defendant Determined that Disclosure of the Requested Video Could Reasonably Be Expected to Cause Damage to the National Security

Executive Order 13526 requires a determination that "unauthorized disclosure of the information could reasonably be expected to result in damage to national security." Exec. Order No. 13526 ¶ 1.1(a). When withholding under FOIA Exemption 1, agencies need only show that disclosure could reasonably be expected to harm national security. *See, e.g.*, *Knight First Amend. Inst.*, 11 F.4th at 819. That is exactly what Defendant has done in this action.

Information is classified as confidential when "the unauthorized disclosure . . . could be expected to cause damage to national security that the original classification authority is able to identify or describe." Exec. Order No. 13526, § 1.2(a)(3). "'Damage to national security' means

harm to the national defense or foreign relations of the United States from unauthorized disclosure of information, taking into consideration such aspects of the information as the sensitivity, value, utility and provenance of that information. *Id.* § 6.1(1).

Defendant identified several potential harms if the requested video was disclosed beyond what has already been made publicly available. Disclosure could reasonably be expected to cause damage to national security because it would reveal (1) specific operational and targeting capabilities of U.S. military forces; (2) information about munitions effectiveness; (3) enable adversaries to assess the U.S. military's tactics and procedures and thereby render ongoing U.S. military operations less effective. Buria Decl. ¶ 13 (addressing harm under Executive Order 13526 § 1.4(a)). Furthermore, disclosure would allow adversaries to glean insights into the U.S. military's capabilities and potential vulnerabilities relating to surveillance and targeting, which could reasonably be expected to cause damage to the national security by revealing operational capabilities and allowing adversaries to develop countermeasures and place U.S. personnel at risk. *Id.* ¶ 14 (addressing harm under Executive Order 13526 § 1.4(g)).

## IV. <u>Defendant Has Fulfilled Its Segregability Obligations</u>

"[A]ny releasable segregable portion of a record" must be released "after deletion of the portions which are exempt" under the FOIA's nine Exemptions. 5 U.S.C. § 552(b); *Leopold*, 94 F.4th at 37 ("Even if an exemption covers an entire agency record, the agency must still release any reasonably segregable information within that record that could be disclosed without causing reasonably foreseeable harm to an interest that the exemption protects."). Defendant properly determined that no portions of the requested video could be segregated and released without causing risk to national security.

### A. Agency Segregability Obligations Under the FOIA.

Segregability requires agencies to "(I) consider whether partial disclosure of information is possible whenever the agency determines that a full disclosure of a requested record is not possible; and (II) take reasonable steps necessary to segregate and release nonexempt information[.]" 5 U.S.C. § 552(a)(8)(A)(ii)(I)–(II). "[A] court may decline to order an agency to commit significant time and resources to the separation of disjointed words, phrases, or even sentences which taken separately or together have minimal or no information content." *Mead Data Cent., Inc. v. Dep't of Air Force*, 566 F.2d 242, 261 n.55 (D.C. Cir. 1977). Furthermore, an agency does not need to disclose non-exempt portions of records if they are "inextricably intertwined with exempt portions." *Id.* at 260; *see also Durrani v. Dep't of Just.*, 607 F. Supp. 2d 77, 99 (D.D.C. 2009) (explaining that agencies must show that "exempt and non-exempt information are so 'inextricably intertwined,' such that excision of exempt information would impose significant costs on the agency and produced an edited document with little informational value") (citation omitted).

To establish that all reasonably segregable, non-exempt information has been disclosed to the requestor, an agency need only show "with reasonable specificity" that the information withheld cannot be further segregated. *Armstrong v. Exec. Off. of the President*, 97 F.3d 575, 578 (D.C. Cir. 1996). The Court "may rely on non-conclusory affidavits demonstrating the basis for withholding if they are not contradicted by evidence in the record or by evidence of the agency's bad faith." *Reps. Comm.*, 3 F.4th at 361; *see also Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106, 1117 (D.C. Cir. 2007) ("Agencies are entitled to a presumption that they complied with the obligation to disclose reasonably segregable material." (citing *Boyd v. Dep't of Just.*, 475 F.3d 381, 391 (D.C. Cir. 2007)).

### B. Defendant Properly Determined that There Were No Reasonably Segregable Portions of the Video that Could Be Released

Courts have further recognized that in the national security context, "bits and pieces of data 'may aid in piecing together bits of other information even when the individual piece is not of obvious importance in itself.' " *Sims*, 471 U.S. at 178 (quoting *Halperin v. CIA*, 629 F.2d 144, 150 (D.C. Cir. 1980)).

The classified footage is approximately two and one-half hours long. Buria Decl. ¶ 4. The specific segments of this video that have been released publicly "portray events that are not themselves classified." *Id.* ¶ 16. However, as Defendant's declarant describes—and which the court "must accord substantial weight," *see, e.g.*, *Knight First Amend. Inst.*, 11 F.4th at 817—"release of those segments along the full-length videos could reveal classified information that is inextricably intertwined with the overall video display," Buria Decl. ¶ 16 ("This is the case due to the additional details provided by uncut footage compared to the short, limited clips in the public domain, all of which are less than a minute long."); *see also id.* ("In addition, when considered as a compilation, the full-length footage could disclose[] classified information as anticipated by [Executive Order] 13526 § 1.7(e).").

Defendant's declarant describes how any further release of the requested video would potentially lead to the foreseeable harms identified, including potentially disclosing the effectiveness of munitions, damage assessments, and U.S. military decision-making relating to follow-up actions. *Id.* ¶ 17; *see also id.* ¶ 8 ("If provided the full-length video, a sophisticated adversary could glean technical knowledge of elevation, speed, range, and other operationally sensitive information about the ongoing military operations."); *id.* ¶ 9 ("Additionally, a study of the full-length video provides insight into the optical tools utilized and their limitations, providing adversaries information useful to defeat or degrade detection and targeting."). In sum, Defendant

has conducted the necessary segregability assessment under the FOIA and properly determined "that no reasonable segregation and release of non-exempt information is possible beyond what is already in the public domain." *Id.* ¶ 18.

Thus, Defendant has demonstrated beyond "reasonable specificity" that there is no reasonably segregable, non-exempt information that can be released beyond that which is already in the public domain, *Cf. Armstrong*, 97 F.3d at 578, and such determination is "not contradicted by evidence in the record or by evidence of [] bad faith, *Reps. Comm.*, 2 F.4th at 361. Thus, Defendant is "entitled to a presumption that [it] complied with" its segregability obligations under the FOIA. *See, e.g.*, *Sussman*, 494 F.3d at 1117.

In light of the Declaration of Ricky D. Buria—Chief of Staff to Secretary Hegseth and an original classification authority—Defendant respectfully submits that it "has plausibly asserted that the [video is] properly classified pursuant to an executive order." *See Schaerr*, 69 F.4th at 929. "Recognizing that national security is primarily the province of the Executive," Defendant respectfully requests that the Court "decline to micromanage agency determinations that such information should remain secret," and grant summary judgment in favor of Defendant. *Id.*; *see also ACLU*, 628 F.3d at 619 (explaining that "in the typical national security FOIA case, [courts] must accord substantial weight to an agency's affidavit concerning the details of the classified status of the disputed record").

* * *

## CONCLUSION

For the reasons set forth above, Defendant respectfully requests that the Court grant its Motion for Summary Judgment and enter judgment in favor of the Defendant.

Dated: July 7, 2026

Respectfully submitted,

JEANINE FERRIS PIRRO
United States Attorney

By: *\/s\/ Zachary C. Simons*

ZACHARY C. SIMONS
DC Bar No. 1736166
Special Assistant United States Attorney
601 D Street, NW
Washington, DC 20530
(202) 730-6967
zachary.simons@usdoj.gov

*Attorneys for the United States of America*